# 2004 DTA 83

### TRIBUNAL DE CIRCUITO DE APELACIONES
### REGION JUDICIAL DE PONCE

CARMEN A. RODRIGUEZ GUTIERREZ, ORLANDO GARCIA PEDROGO
Querellantes-Recurridos

v.

AUTOSUMIT H/N/C SEÑORIAL FORD, FORD MOTOR COMPANY,
FORD MOTOR CREDIT COMPANY
Querellados-Recurrentes

Núm. KLRA-04-00130

San Juan, Puerto Rico, a 25 de marzo de 2004

Panel integrado por su Presidente, el Juez Brau Ramírez,
y los Jueces Hernández Torres y Martínez Torres

Hernández Torres, Jueza Ponente

██

## TEXTO COMPLETO DE LA RESOLUCION

Comparece ante nos Autosumit h/n/c Señorial Ford (en adelante recurrente) y solicita la revocación de una Resolución del Departamento de Asuntos del Consumidor (DACO), el 30 de enero de 2004, archivada y notificada ese mismo día.

En dicha Resolución se ordenó, entre otras cosas, que Ford Motor Company Caribbean, Inc., Señorial Ford y Ford Motor Credit Co. en forma solidaria pagaran a los aquí recurridos, lo que hubiesen pagado mensualmente a Ford Motor Credit Co., descontando cierta suma por concepto de compensación por uso razonable. Además, relevó a los recurridos de continuar realizando los pagos a Ford Credit Co. Por otra parte, impuso una cantidad por pago de honorarios y una vez los pagos le sean realizados a los recurridos, ordenó a éstos entregar el vehículo en controversia a Señorial Ford. De igual forma, se ordenó reembolsar a los

recurridos doscientos noventa y siete dólares ($297.00) por concepto de alquiler de vehículo.

Los hechos relevantes al asunto ante nos son los siguientes.

# I

La señora Carmen Rodríguez (recurrida) adquirió un vehículo Ford Explorer 2002, el cual al mes de adquirido presentó un "*cantazo*" en la parte del frente, a los cinco (5) meses, presentó "*liqueo*" de aceite de transmisión y el cambio no le aplicaba (patinaba la transmisión). A los cinco (5) meses la recurrida logró que se le reparara el vehículo, pero volvió a presentarse el "*liqueo*" mayor y a "*patinar*" la transmisión.

Luego de estar el vehículo por cinco (5) días reparándose, los aquí recurridos tuvieron que regresarlo al taller al otro día de que se lo entregaran, presentando el vehículo un ruido más fuerte ("*como de lata*"). Señorial Ford realizó prueba de manejo en la carretera, la cual no pasó el vehículo, por lo que le volvieron a remover nuevamente la transmisión. Esta vez, dicho vehículo estuvo en el taller desde el 3 de octubre hasta el 12 de diciembre de 2001, en que le fue entregado a los recurridos.

Durante los setenta (70) días que los recurridos estuvieron sin vehículo, ninguno de los recurrentes les proveyó transportación, a pesar de que les fue solicitado; por lo que recurridos incurrieron en una ocasión en un gasto de doscientos noventa y siete dólares ($297.00) por concepto de alquiler de automóvil. Luego se quedaron sin transportación por falta de recursos económicos, ya que continuaban pagando las mensualidades del vehículo Ford que no les daba servicio.

En el mismo mes de diciembre de 2001, más o menos una semana después de que se lo entregaran, supuestamente reparado, tuvieron los recurridos que llevarlo nuevamente al taller por continuar "*liqueando*" aceite de transmisión y con un "*haloneo*" en la marcha.

El 15 de octubre de 2001, los aquí recurridos acudieron al Departamento de Asuntos del Consumidor (DACO) y presentaron una querella la que fue notificada a todas las partes. El 2 de enero de 2002, el vehículo fue llevado nuevamente al taller con los mismos desperfectos, así como el 28 de enero de 2002, cuando Señorial Ford informó no encontrarle falla electrónica, entregándoles el vehículo el 30 de enero de 2002. Al día de la vista ante DACO, el vehículo presentaba los mismos problemas.

El vehículo fue inspeccionado en dos (2) ocasiones por el técnico automotor de DACO, el señor Marcos Martínez, quien pudo corroborar la evidencia de los defectos a que se aludían, además de muchos otros.

Es en medio de estas inspecciones que Señorial Ford y Ford Motor Company indicaron tener una transmisión nueva y lista para instalar, y la aquí recurrida no aceptó dicha oferta. Celebrada la vista, ninguna de las partes presentó prueba testifical, sólo la declaración de la aquí recurrida a quien la Magistrada que presidió la vista le dio entera credibilidad.

Así las cosas, DACO ordenó a los aquí recurrentes a pagar una serie de cantidades solidariamente y decretó la resolución del contrato de venta. Inconforme con tal decisión, los recurrentes acuden ante nos y señalan la comisión por parte de DACO de los siguientes errores.

*"PRIMER ERROR: Erró DACO, como una cuestión de derecho, al emitir una Resolución cuando ya DACO había perdido jurisdicción.*

*SEGUNDO ERROR: Erró DACO, como una cuestión de derecho, al decretar la rescisión del contrato de compra ya que no se cumple en este caso con las disposiciones del Código Civil sobre saneamiento por vicios ocultos y la jurisprudencia interpretativa de las mismas; no se cumple con las disposiciones de la Ley*

*Complementaria de Garantías de Vehículos de Motor y por la querellante haberse negado a que se le reparara el vehículo con una transmisión nueva.*

*TERCER ERROR: Erró DACO, como una cuestión de derecho, al imponerle solidariamente a las querelladas, es decir, a Señorial Ford y a Ford Motor Company una cuantía por concepto de honorarios.*

*CUARTO ERROR: Erró DACO, como cuestión de derecho, al concluir que la compensación razonable que establece la Ley Complementaria de Garantía de Vehículos de Motor, se computa hasta el momento en que alegadamente se agotan las oportunidades de reparaciones que establece dicha ley, constituyendo ese momento el "acuerdo de conciliación".*

## II

Discutidos los hechos relevantes, procedemos a plantear la norma jurídica aplicable.

### A

La Sección 4.1 de la Ley de Procedimiento Administrativo Uniforme (L.P.A.U.), 3 L.P.R.A. sec. 2171, permite que se solicite al Tribunal de Apelaciones la revisión de decisiones administrativas. Al respecto, es norma de derecho claramente establecida que los tribunales apelativos han de conceder gran consideración y deferencia a las decisiones administrativas en vista de la vasta experiencia y conocimiento especializado de la agencia. *Socorro Rebollo v. Yiyi Motors,* Opinión de 13 de enero de 2004, **2004 J.T.S. 4**, a la pág. 501; *Pacheco Torres v. Estancia de Yauco, S.E.*, Opinión de 30 de septiembre de 2003, **2003 J.T.S. 150**, a la pág. 210; *T. Jac, Inc. v. Caguas Centrum Limited,* 148 D.P.R. 70 (1999); *Agosto v. Fondo del Seguro del Estado*, 132 D.P.R. 866, 879 (1993). Por lo tanto, la persona que alegue lo contrario tendrá que presentar evidencia suficiente para derrotar tal presentación, no pudiendo descansar únicamente en meras alegaciones. *Pacheco Torres v. Estancia de Yauco, S.E., supra*, a las págs. 210-211.

La revisión judicial es limitada. Sólo determina si la actuación administrativa fue una razonable y cónsona con el propósito legislativo o si por el contrario fue irrazonable, ilegal, o medió abuso de discreción. *Mun. de San Juan v. J.C.A,* 149 D.P.R. 263 (1999); *T-JAC, Inc. v. Caguas Centrum Limited Partnerhip, S.E., supra*, a la pág. 884; *Com. Vec. Pro-Mej., Inc. v. J. P.,* 147 D.P.R. 750 (1999); *Fuertes y otros v. A.R.P.E.,* 134 D.P.R. 947, 953 (1993).

Es norma reiterada que los procedimientos y decisiones administrativas tienen una presunción de regularidad y corrección que debe refutar quien las impugna, sin descansar en meras alegaciones. *Socorro Rebollo v. Yiyi Motors, supra; Pacheco Torres v. Estancia de Yauco, S.E., supra,* a las págs. 210-211; *Com. Vec. Pro-Mej. Inc. v. J.P., supra.* Sin embargo, las cuestiones de derecho, contrario a las de hechos, que no involucren interpretaciones efectuadas dentro del ámbito de especialización de la agencia, son revisables en toda su extensión. Véanse: *Pacheco Torres v. Estancia de Yauco, S.E., supra,* a la pág. 211; *San Antonio Maritime v. Puerto Rican Cement*, Opinión de 19 de febrero de 2001, **2001 J.T.S. 20**, pág. 860; *T. Jac, Inc. v. Caguas Centrum Limited, supra.* Si las conclusiones de derecho de un foro administrativo están sujetas al mandato de la ley, los tribunales debemos sostenerlas. *Misión Ind P.R. v. J.P., supra,* a la pág. 133. Es por esta razón que los tribunales debemos ser cautelosos al intervenir con dichas determinaciones. *Viajes Gallardo v. Homero Clavell*, 131 D.P.R. 275, 290 (1992). Aun en los casos dudosos, cuando la interpretación de la agencia no sea la única razonable, la actuación del organismo administrativo merece deferencia sustancial. Véase: *De Jesús v. Departamento de Servicios Sociales*, 123 D.P.R. 407, 418 (1989); *Asociación Médica de Puerto Rico v. Cruz Azul*, 118 D.P.R. 669, 678 (1987).

Con respecto a este particular, el Tribunal Supremo ha expresado que *"[n]o empece esta deferencia, la interpretación de la agencia no merece deferencia si la misma afecta derechos fundamentales, resultare irrazonable, o conduce a la comisión de una injusticia". Costa, Piovanetti v. Caguas Expressway,* Opinión de

29 de diciembre de 1999, **2000 J.T.S. 11**, pág. 489. Por otro lado, la interpretación de una agencia administrativa tampoco·podrá prevalecer y sostenerse cuando·la·misma produce resultados inconsistentes con o contrarios al propósito del estatuto interpretado. *Id.*; *Calderón v. Adm. Sistemas de Retiro*, 129 D.P.R. 1020, 1042 (1992). Además, se ha sostenido que los tribunales revisores podrán intervenir con una determinación administrativa, si la misma fue *"irrazonable, ilegal o si medió abuso de discreción"*. *T. Jac, Inc. v. Caguas Centrum Limited, supra.* Véase además: *Agosto v. Fondo del Seguro del Estado, supra.*

El criterio rector para los tribunales será la·razonabilidad en·la·actuación de la agencia recurrida. Así pues, al realizar su función revisora, el tribunal está compelido a considerar la especialización y experiencia de la agencia sobre las cuestiones que tuviera ante sí. Por tanto, en el descargo de su función deberá caracterizar entre asuntos de discernimiento estatuario o cuestiones de especialización administrativa. La deferencia reconocida no equivale a una renuncia de la función revisora del Tribunal en instancias apropiadas y meritorias, como resulta ser cuando el organismo administrativo·ha errado en·la·aplicación de la ley.

*Socorro Rebollo v. Yiyi Motors, supra,* a las págs. 501-502; *Reyes Salcedo v. Policía de P.R.,* 143 D.P.R. 85 (1987).

La Ley de Procedimiento Administrativo Uniforme, Ley Núm. 170 de 12 de agosto de 1988, 3 L.P.R.A., Sec. 33.13, señala que *"todo caso sometido a un procedimiento adjudicativo ante una agencia, deberá ser resuelto dentro de un término de seis (6) meses, desde su radicación, salvo en circunstancias excepcionales"*.

A tenor con esta sección y la sección 3.14 de la Ley de Procedimientos Administrativos Uniforme, *supra*, el Tribunal Supremo ha señalado que ese término de seis (6) meses para resolver un caso no es jurisdiccional, ya que puede ser extendido por consentimiento de las partes o por causa justificada. *Junta Exam. de Tecnólogos Médicos v. Elías, Roselló, Palermo y Pujols*, 144 D.P.R. 483 (1997).

Este término de seis (6) meses no es jurisdiccional, pues determinar que lo fuera, implicaría añadir al estatuto elementos que no contiene y que el legislador no contempló al momento de aprobar la ley. *Junta Exam. de Tecnólogos Médicos v. Elías, Roselló, Palermo y Pujols, supra.*

Cuando la agencia no cumple con la obligación de resolver dentro del término de seis (6) meses dispuesto, el remedio judicial disponible es la presentación de un *Mandamus* en el Tribunal de Circuito de Apelaciones, quien atenderá este recurso con carácter prioritario y lo resolverá rápidamente. *Junta Exam. de Tecnólogos Médicos v. Elías, Roselló, Palermo y Pujols, supra.*

De igual modo, el Tribunal Supremo de Puerto Rico ha señalado que el término establecido (el de los seis (6) meses) es de carácter directivo y no jurisdiccional. *Lab. Inst. Med. Ava. v. Lab. C. Borinquen*, 149 D.P.R. 121 (1999). Por lo tanto, la obligación de las agencias de cumplir dichos términos es de cumplimiento estricto. Pueden dichos términos ampliarse en circunstancias excepcionales, o por consentimiento de las partes, o causa justificada.

**B**

**Saneamiento por Vicios Ocultos**

Cuando una persona adquiere una cosa es porque pretende obtener de ella algún beneficio o utilidad. Por esa razón, el Derecho ampara al comprador cuando la cosa adquirida no es susceptible de rendir la utilidad que de ella se espera, porque algún vicio o defecto se lo impide. José Ramón Vélez Torres, *Curso de Derecho Civil-Derecho de Contratos*, San Juan, Revista Jurídica de· la Universidad Interamericana de Puerto Rico, Tomo IV, Vol. II, 1990, pág. 176.

El Artículo 1350 del Código Civil, 31 L.P.R.A. sec. 3801, dispone: *"El vendedor está obligado a la entrega y saneamiento de la cosa objeto de la venta"*. En virtud del saneamiento que dispone el Artículo 1350, *id.*, el Código Civil dispone que el vendedor responderá al comprador: (1) de la posesión legal y pacífica de la cosa vendida, y (2) de los vicios ocultos que tuviere. Por tanto, el saneamiento se define como una obligación que contrae el vendedor de procurar al comprador la posesión pacífica y útil de la cosa, y de indemnizarle de los daños y perjuicios en el caso de que aquel compromiso no obtenga cumplimiento. José Castán Tobeñas, *Derecho Civil Español, Común y Foral*, Madrid, Editorial Reus, 15ta. ed., Tomo IV, pág. 121.

El Artículo 1373 del Código Civil, *supra*, sec. 3841, regula el llamado saneamiento por vicios ocultos. Consiste de aquella situación que se produce cuando, después de verificada la entrega, se observa que la cosa vendida tiene vicios ocultos que la hacen impropia para los usos a que se destina o disminuyen de tal modo su utilidad que, de haberlos conocido el comprador, no hubiese adquirido la cosa o habría pagado menos por ella.

El Tribunal Supremo de Puerto Rico ha mencionado que los defectos o vicios ocultos en la cosa vendida pueden ser jurídicos, *"en cuyo caso consistirán en una limitación del derecho transmitido (como por ejemplo una servidumbre no aparente en caso de un inmueble) o pueden ser de hecho, como cuando se trata de defectos intrínsecos de la cosa vendida"*. *Ferrer v. General Motors Corp.,* 100 D.P.R. 246, 255 (1971).

La acción de saneamiento por vicios ocultos tiene dos vertientes por las que el comprador puede optar. En la acción redhibitoria, el comprador elige la rescisión del contrato que **consiste en devolver el objeto y recibir el precio pagado,** y además puede obtener indemnización de daños si el vendedor conocía el vicio. *Márquez v. Torres Campos*, 111 D.P.R. 854, 862 (1982). En la acción estimatoria o *quanti minoris*, el comprador elige recibir una rebaja del precio en atención a la disminución de valor ocasionada por el defecto. *Id.*

Para que los vicios ocultos obliguen al vendedor a proveer saneamiento, es necesario cumplir con los siguientes requisitos: (a) éstos no deben ser conocidos por el adquirente; (b) el defecto debe ser grave o suficientemente importante para hacer la cosa impropia para el uso a que se le destina o que disminuya de tal modo su uso que, de haberlo conocido el comprador, no lo habría comprado o hubiere pagado menos; (c) que el defecto sea preexistente a la venta; y (d) que se ejercite la acción en el plazo legal de seis meses desde que se entrega la cosa vendida. *Pérez Vélez v. VPH Motors Corp., supra*, pág. 378.

Se ha resuelto que no son vicios redhibitorios o cuantiminosos aquellos defectos que no exceden de la medida de las imperfecciones menores que cabe esperar normalmente en un producto determinado. *Domínguez Talavera v. Caguas Expressway Motors, Inc.,* Opinión de 24 de mayo de 1999, **99 J.T.S. 85**; énfasis suplido. Es decir, el defecto debe ser de tal naturaleza que entrañe cierta importancia, pues una imperfección cualquiera o de poca monta no da lugar a la redhibición. *Schmidt v. Marcelino Mercury, Inc.,* 195 D.P.R. 80, 84 (1976). Sin embargo, **no se requiere que el defecto imposibilite el uso de la cosa; basta que merme notablemente su valor**. *Domínguez Talavera v. Caguas Expressway Motors, Inc., supra*, pág. 1067.

## C
### Ley de Garantías de Vehículos de Motor

La Ley Núm. 7 de 24 de septiembre de 1979, conocida como Ley de Garantías de Vehículos de Motor, 10 L.P.R.A. sec. 2051 et. *seq.*, se aprobó con el fin de velar porque los intereses de los consumidores sean salvaguardados frente a los intereses del manufacturero y el distribuidor o vendedor. A esos efectos, se le concedió al Departamento de Asuntos del Consumidor (D.A.C.O) la facultad de adoptar los reglamentos necesarios para implantar los propósitos de la ley.

El Reglamento de Garantías de Vehículos de Motor, Núm. 4797 de 30 de octubre de 1992, según enmendado, tiene el propósito de *"asegurarle a todo consumidor que adquiera un vehículo de motor en Puerto*

*Rico, que el mismo sirva para los propósitos para los que fue adquirido, y que reúna las condiciones mínimas necesarias para garantizar la protección de su vida o propiedad...".*

Por otro lado, el Artículo 5 del Reglamento Núm. 5361 de 11 de febrero de 1996, el cual enmienda en parte el Reglamento Núm. 4797, *supra*, dispone que el término "*as is*" se define de la siguiente forma: *"Usted está comprando un automóvil exactamente en las condiciones en que usted lo ve. El vehículo será vendido sin garantía alguna y usted corre el riesgo de tener que pagar la reparación de los defectos que tenga"*. Esta renuncia de garantía, para que se considere válida, debe ser consciente, informada y por escrito, según dispone el Art. 23.2 del referido Reglamento.

Esta es una renuncia general de las garantías que ofrece el D.A.C.O., mas no de la acción de saneamiento que dispone el Código Civil. En específico, el Artículo 34 del Reglamento 4797, *supra*, dispone lo siguiente:

*"Artículo 34: Derechos del Consumidor*

*Nada de lo dispuesto en este Reglamento limitará en forma alguna el derecho del consumidor a ejercer cualquier acción que le reconozcan las leyes generales o especiales del Estado Libre Asociado de Puerto Rico, así como las acciones de saneamiento por evicción, saneamiento por vicios ocultos y la acción redhibitoria que reconoce el Código Civil de Puerto Rico."*

Expuesta la norma jurídica aplicable, procederemos al análisis de ésta, conforme a los hechos específicos del asunto ante nos.

### III

Al estudiar el expediente, no cabe duda de que los recurridos adquirieron un vehículo de motor (Ford Explorer) como "*nuevo*" con una garantía de tres (3) años o treinta y seis mil (36,000) millas, lo que ocurriera primero, y a los cinco (5) meses de dicha compra, llevan por primera vez a los vendedores aquí recurrentes dicho vehículo por problemas con el mismo.

Igualmente, tuvieron que llevar el vehículo nuevamente en octubre de 2001 y hasta el 12 de diciembre de 2001. Vuelven a llevar el vehículo a la semana siguiente de haberlo recibido. Para ese entonces, específicamente, el 15 de octubre de 2001, los aquí recurridos habían acudido a DACO a presentar querella. Luego, el 2 de enero y el 28 de enero de 2002, el vehículo fue llevado nuevamente al taller. Es decir, el vehículo fue llevado en cinco (5) ocasiones al taller para la misma reparación sin lograr que el mismo funcionara debidamente.

El vehículo fue inspeccionado en dos (2) ocasiones por el técnico automotor de DACO, precisamente ante las alegaciones de los recurrentes de que podían reparar el mismo.

El 28 de enero de 2002, la querella fue enmendada por última vez y el 4 de junio de 2002, luego de varios trámites, se pautó vista para el 19 de junio de 2002, a las 9:00 a.m. El 12 de junio de 2002, Autosumit, Inc. h/n/c Señorial Ford solicitó la transferencia de la vista para el 11 de julio de 2002.

En ningún momento, los recurrentes plantearon ante DACO la desestimación de la querella por haber alegadamente transcurrido el término dispuesto por la Ley de Procedimiento Administrativo Uniforme sin mediar causa justificada para ello. Es aquí, ante nos, que se alega en primera instancia. Tampoco se utilizó el recurso de *Mandamus*.

No podemos pasar por alto que este tipo de caso requiere que se le de oportunidad real al vendedor (aquí recurrente) para reparar los desperfectos que pueda tener el automóvil vendido. Existen circunstancias

excepcionales como la complejidad y número de pruebas a que se tiene que someter el vehículo de motor que puede no permitir el cumplimiento estricto del término para que DACO resuelva el asunto.

Traer por primera ese asunto ante nos, sin haberlo llevado ante la consideración de la agencia administrativa, en ningún momento durante el proceso, contraviene lo que a tales efectos ha expresado el Tribunal Supremo de Puerto Rico. Además de lo anterior, no nos ponen en posición los recurrentes de saber si en efecto no hubo esas circunstancias especiales de que habla la Ley de Procedimiento Administrativo Uniforme. Por tanto, no podemos desestimar un recurso o invalidar una determinación administrativa que en derecho procede, nuevamente por alegaciones que la agencia no ha podido rebatir por no habérseles planteado.

Analizando el expediente en su totalidad, es fácil colegir que el trámite, aunque no lo expedito que debió ser, fue razonable de haber circunstancias excepcionales por la complejidad, además, de que y los propios recurrentes contribuyeron en cierta medida a la tardanza en la solución del mismo. El primer error no se cometió. Por otra parte, no podemos coincidir con los recurrentes en que DACO cometió los otros tres (3) errores señalados por éstos.

No existiendo arbitrariedad o abuso de discreción, debemos total deferencia a las determinaciones administrativas. Dichas agencias están en mejor posición que un tribunal apelativo para apreciar la prueba presentada.

**IV**

Por los fundamentos anteriormente expresados, denegamos la expedición del auto solicitado.

Lo acordó y ordena el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General